13   229|
108   653|

## D. & J. LANATA *v.* J. O'BRIEN.

Where a sale was made of so many barrels of potatoes and onions, at a certain price, to be delivered from a vessel then in transit from New York to New Orleans, without any guarranty at all, except as to the number of barrels : *Held*, that the exclusion of warranty did not empower the vendor to deliver barrels partly empty, or containing decayed matter.

By the exclusion of warranty it was not intended to free the vendor from the obligation of delivering merchandise of the species sold, though he was not bound to deliver it of the best quality or in the best condition.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.   C. *Dufour*, for plaintiffs.   *Purvis & Dugué*, for defendant and appellant.

COLE, J.   The plaintiffs sold and agreed to deliver to defendant, on the arrival of the ship *Toulon*, two parcels of merchandize, consisting severally of 100 barrels of potatoes, and fifty of onions, at a designated price.

The sale was made without any special warranty, and the only question to be decided is, whether when an article of merchandise is sold without any special warranty, the vendor is obliged to deliver it in a merchantable form.

The evidence establishes that defendant purchased the potatoes and onions at $3 25 per barrel, without any guarantee at all, except as to the number of barrels ; he was, by the contract, to take them, good or bad, at that price.

On the arrival of the ship from New York, defendant accepted the potatoes, but refused to take the onions, on account of their condition.   They were mostly rotten.   In some of the barrels, one of the witnesses supposes that there were not six sound ones.   Some of the barrels were so bad that it was not necessary to examine them ; they were leaking.   In others not a sign of an onion could be seen—" it was a complete mush."

It is also established that merchandize in this condition is generally hauled to the nuisance wharf.

It appears that the onions, by decomposition, had generally lost their form and appearance, and could hardly be distinguished as such, and were entirely unmerchantable.

Defendant offered to pay for the potatoes, but declined paying for the onions.

There was judgment for plaintiff ; the lower court considering defendant was bound, because he had bought without warranty.

The material inquiry is, what is the effect of this sale without guaranty, under the peculiar circumstances of this case ?

We are of opinion that it did not empower plaintiff to deliver fifty barrels, partly empty or containing decayed matter, the result of decomposition of the onions ; because there was only a small difference between their value fully warranted, and the price given by defendant.

One of plaintiffs' witnesses testifies that he was offered $3 55 or 60, for the potatoes and onions, if plaintiffs would guarantee them.

As the difference was so slight between the real value of the onions fully guaranteed and the price given, plaintiffs must be considered to have at least warranted the existence of the article sold.   The exclusion of warranty signified only, in this case, that the onions might not be of the best quality, or in the best order, but it did not liberate plaintiffs from the obligation of delivering them *in specie*.   If a

man buys a horse without warranty, it certainly would not be a compliance with the contract to deliver a decomposed mass of flesh.

In the case at bar, defendant bought onions, and the obligation of the plaintiffs is to deliver onions of some kind, and in a condition to be recognized as onions, and not as a mass of decayed matter. C. C. 2433, 2450, 2467, 2616.

This contract is not of an aleatory character, because nearly the market value was given for the goods sold. If it had been aleatory in its nature, the price would have corresponded with the uncertainty. C. N. 1629, and note of Rogron : " Le prix a dû être fixé en regard à cette incertitude."

Art. 2216 of the Civil Code provides : " that the loss of the thing, or its being rendered unsaleable, extinguishes the obligation, etc." By Art. 2433 C. C., it is provided, that when goods are sold by weight, tale, or measure, the things sold are at the risk of the seller, until they are weighed counted or measured." C. C. Art. 2152 declares : " That if the debt be a thing which is determined only by its species, the debtor, in order to his discharge, is not bound to deliver it of the best kind, but he cannot tender it of the worst."

The preceding Articles seem to apply to a case like this, where the price was such as to show that the exclusion of warranty was not intended by the parties to free the vendor from the obligation of delivering merchandise of the species sold, without, however, obliging him to deliver it of the best quality, or in the best condition.

It appears from the testimony of *Schneider*, that he was in New York when the ship Toulon sailed. He saw some potatoes and onions arrive at the wharf in New York, when it was raining. That he was afraid of the lot he had on board, as onions shipped in a wet condition are apt to decay. Defendant argues, that it is fair to presume that *Lanata* was aware of the fact and kept the same concealed from his vendee, and he should not be allowed to profit by his wrongful concealment, C. C. 2523. There is, however, no proof that plaintiffs were aware of the condition of the onions at the time of the sale. The existence of the telegraph renders it, however, more necessary now than formerly to construe strictly contracts like the one at bar ; for by means of telegraphic despatches, the vendor may become aware of a certain condition of the goods when shipped, which may induce him to believe they will be spoilt on their arrival at the port of destination.

Defendant is entitled to a deduction for the fifty barrels of onions at $3 25 per barrel.

It is, therefore, ordered, adjudged and decreed, that the judgment be avoided and reversed, and that plaintiffs recover of defendant three hundred and twenty-five dollars, with legal interest thereon from judicial demand, and costs of the lower court. It is further ordered and decreed, that plaintiffs pay the costs of appeal.

SPOFFORD, J. dissenting. When a party sells such perishable articles as vegetables, while in transit by sea from New York to New Orleans, *with an express exclusion of warranty*, in the absence of fraud, I think the vendee takes upon himself the risk of loss from decay in the voyage.